**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LAWRENCE E. NEACK, | : | |
| *Plaintiff*, | : | Case No. 1:22-cv-67 |
| v. | : | Judge Jeffery P. Hopkins |
| UC HEALTH LLC, *et al.*, | : | |
| *Defendants*. | : | |

**OPINION AND ORDER**

Plaintiff Lawrence E. Neack ("Plaintiff" or "Dr. Neack"), a now-retired doctor licensed to practice medicine in the state of Ohio, sought pension benefits under the UC Health Retirement Plan. When Defendants UC Health, LLC ("UC Health") and the UC Health Retirement Plan (the "UC Health Plan" or the "Plan") (collectively, "UC Health") denied Dr. Neack's request for pension benefits and he had exhausted his administrative remedies to get that decision overturned, this lawsuit followed. The parties have filed Cross-Motions for Judgment on the Administrative Record and Cross-Responses. For the reasons stated below, the Court **GRANTS** judgment on the administrative record to UC Health (Doc. 39) and **DENIES** judgment on the administrative record as to Dr. Neack (Doc. 40).

## I. BACKGROUND

### A. Factual Background

Dr. Neack began his medical career in 1992. Initially, Dr. Neack was employed by Lawrence Neack MD, Inc. ("LNI"). Then, on July 31, 1995, The Christ Hospital Medical Associates ("TCHMA"), the predecessor entity of Alliance Primary Care ("APC"), acquired

the assets of LNI and Dr. Neack became employed by TCHMA, later APC. Admin. R., Doc. 37, PageID 841, 844. Dr. Neack worked for TCHMA/APC until December 1, 2000, when he began to practice medicine as an employee of Mason Area Medical Associates, Inc. ("MAMA"). *Id.* Several years later, on December 1, 2005, APC acquired the assets of MAMA, and Dr. Neack found himself once again employed by APC. *Id.* Dr. Neack terminated his employment with APC on May 1, 2010. *Id.* at PageID 841, 845. In sum, Dr. Neack had two periods of employment at APC, separated by an intervening period when he practiced with MAMA: July 31, 1995 to December 1, 2000 (the "First APC Employment Period"), December 1, 2000 to December 1, 2005 (the "Intervening MAMA Employment Period"), and December 1, 2005 to May 1, 2010 (the "Second APC Employment Period").

After his employment with APC ended, Dr. Neack made a request for pension benefits under the UC Health Plan. The Director of Corporate Benefits and Pension for UC Health, Christine Buczek ("Buczek"), reviewed Dr. Neack's claim for benefits and determined he was not entitled to pension benefits under the UC Health Plan because he had not attained the requisite Five Years of Participation to obtain vested pension benefits. *Id.* at PageID 844–45. Dr. Neack appealed to the UC Health Retirement Benefits Committee (the "Committee"), where Buczek also served as one of the members, *see id.* at PageID 846, and the Committee reached the same conclusion, *id.* at PageID 848–50. Buczek and the Committee made these determinations based on several pension plans that operated adjacent to one another during Dr. Neack's intermittent periods of employment with APC.

During Dr. Neack's First APC Employment Period, two plans were in effect: The Elizabeth Gamble Deaconess Home Association Pension Plan (the "Gamble Plan") and the Health Alliance Retirement Plan (the "Alliance Plan"). *Id.* at PageID 371–456, 457–580. The

Gamble Plan was the operative plan from July 1995 until December 31, 1998, and that plan was amended several times. *Id.* at PageID 443–56. That said, only one of those amendments—the second amendment—is at issue. *Id.* at PageID 446–53. On January 1, 1998, the Gamble Plan was amended to change the methodology for determining when an "APC Physician" earned a Year of Participation (the "Gamble Amendment"). Prior to the Gamble Amendment, a Year of Participation accrued under an "hour counting method" and was defined as:

> [Section 2.45] (a) "Years of Participation" means, subject to (b) below, the sum of the following: . . . (2) each Plan Year, from and after the Effective Date, during which an individual completes 1000 or more Hours of Service[.]

*Id.* at PageID 384. However, the Gamble Amendment changed the methodology for an APC Physician like Dr. Neack, from the hour counting method to an "elapsed time method":

> [Section] 2.45 (c) Except for the transition period described at Section 2.46(c)(3)(C), no Years of Participation shall be earned under this Section 2.45 with respect to any period that the Participant is being credited with APC Physician Years of Credited Service under Section 2.46. *With respect to a Participant employed as a physician by Alliance Primary Care, Years of Participation means the sum of the following: . . . (2) APC Physician Years of Service earned by the Participant under Section 2.46.*
>
> . . .
>
> [Section] 2.46 (a) "APC Physician Years of Service" with respect to any Participant who is a physician employed by Alliance Primary Care, means each *12 month period* of Physician Service (as defined below). *Nonsuccessive periods* of Physician Service shall be aggregated, and less than whole year periods of Physician Service (whether or not consecutive) *shall be aggregated on the basis that 12 months of Physician Service* (30 days are deemed to be a month in the case of aggregation of fractional months) equal a whole APC Physician Year of Service.
>
> . . .
>
> [Section 2.46] (c) (3) "Physician Service" means, effective for service on or after January 1, 1998, the sum of the following periods of employment as a

> physician with Alliance Primary Care (whether or not continuous), provided that no period of time shall be counted more than once:
>
> > (A) each period beginning on the later of January 1, 1998, an individual's Physician Employment Commencement Date, or an individual's Reemployment Commencement Date and ending with his next Severance from Physician Service;
> >
> > (B) any separation commencing on or after January 1, 1998 by a physician from the employment of Alliance Primary Care of 12 months or less; and
> >
> > (C) with respect to any Physician employed by Alliance Primary Care on December 31, 1997, the number of months of Physician Service that would have been credited prior to January 1, 1998 under the elapsed time method for the 12 month period of Physician Service that includes January 1, 1998.

*Id.* at PageID 450–51 (emphasis added). Here, Dr. Neack and UC Health dispute the effect of the Gamble Amendment on Dr. Neack's Years of Participation. One year after the Gamble Amendment, on January 1, 1999, the Alliance Plan became the operative plan and remained the operative plan through the rest of Dr. Neack's First APC Employment Period. *Id.* at PageID 457–580. When Dr. Neack returned for his Second APC Employment Period, the UC Health Plan was the operative plan and remained so during that entire period. *Id.* at PageID 581–832.

Aside from the Gamble Amendment, Dr. Neack does not dispute that the plan provisions relevant to his claim for pension benefits were materially the same under the Gamble Plan, the Alliance Plan, and the UC Health Plan.

**B. Procedural Background**

Following denial of his claim for pension benefits and resulting appeal, Dr. Neack filed this suit, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). Doc. 1. In an earlier Opinion and

Order, this Court dismissed Dr. Neack's breach-of-fiduciary-duty claim under 29 U.S.C. § 1132(a)(3). Doc. 18. This Court later permitted Dr. Neack to amend his Complaint to add new factual allegations. Dr. Neack was not permitted to revive previously-dismissed defendants or claims. Dr. Neack has since filed his Amended Complaint. Doc. 45. Thus, all that remains is Dr. Neack's claim for benefits made under 29 U.S.C. § 1132(a)(1)(B). Both parties have filed Cross-Motions for Judgment on the Administrative Record (Docs. 39, 40), and Cross-Responses (Docs. 43, 44). The Motions are ripe for determination.

## II. LAW AND ANALYSIS

The parties' cross-motions raise procedural and substantive issues concerning the Committee's denial of Dr. Neack's pension-benefits claim: (1) the authenticity of the administrative record, (2) the applicable standard of review, and (3) the denial of Dr. Neack's claim for pension benefits. As to the first and second issues, Dr. Neack contends that the administrative record is neither certified nor accurate, and thus, *de novo* review is appropriate. Doc. 40, PageID 911. UC Health counters that the administrative record has been authenticated and the Plan afforded UC Health discretionary authority to decide eligibility for benefits and construe the Plan terms, thus the arbitrary and capricious standard, rather than *de novo* review, applies. Doc. 39, PageID 900. As to the third issue, Dr. Neack claims that UC Health's denial violated ERISA's anti-cutback rules and a reasonable application of the Plan provisions, even as amended, establishes his entitlement to benefits. Doc. 40, PageID 913–15. Predictably, UC Health maintains a different view. UC Health counters that the Committee's decision to deny Dr. Neack pension benefits was neither arbitrary or capricious because the Committee offered a reasonable explanation based on substantial evidence. Doc. 39, PageID 902.

### A. The administrative record is properly before the Court.

Dr. Neack challenges the legitimacy of the administrative record on the basis that it "lacks any form of certification or verification to establish that it is complete, accurate and authentic." Doc. 40, PageID 911. That is not the case here. Subsequent to filing the administrative record, UC Health filed the declaration of Christine Buczek to authenticate the administrative record.[1] Buczek Decl., Doc. 42, ¶¶ 3–5. Buczek is the former UC Health Director of Corporate Benefits and Pension and a member of the UC Health Retirement Benefits Committee. *Id.* As the Director of Corporate Benefits and Pension, Buczek personally "reviewed and investigated" Dr. Neack's claim for pension benefits and determined that the claim should be denied, and then, as a member of the Committee, she participated in the review of his subsequent appeal. *Id.* ¶¶ 4, 5. Buczek was therefore well positioned to declare that the documents that UC Health purports to be the complete administrative record "are the documents that [she] reviewed, relied upon, compiled, or generated in connection with assessing" Dr. Neack's claim and appeal. *Id.* ¶ 6. Despite the evidence of Buczek's declaration, Dr. Neack says the administrative record remains unauthenticated because Buczek "does ***not*** confirm that the information that UC Health is now referring to as the 'Administrative Record' actually ***is*** the Administrative Record." Doc. 44, PageID 944. But this argument is unavailing because it represents an attempt to elevate semantics over substance: Buczek's declaration identifies the documents she reviewed, relied

[1] Dr. Neack contests the belated filing of Buczek's declaration. But as UC Health has made clear, Buczek is no longer employed by UC Health and counsel for UC Health had to make several attempts to contact her. Flottman Decl., Doc. 43, Ex. A, ¶¶ 5–6. UC Health attempted to make Buczek available for deposition but she refused and UC Health could not require her appearance as a former employee. *Id.* ¶¶ 7–8. Dr. Neack's counsel declined to issue a subpoena. *Id.* ¶ 9. Though Buczek later agreed to be deposed after an offer of compensation by UC Health, Dr. Neack's counsel declined to depose her. *Id.* ¶ 12.

upon, compiled, or generated in assessing Dr. Neack's claim and appeal—the very materials that comprise the administrative record.

Although Dr. Neack argues that "various individuals associated with UC Health contradict each other in their descriptions of who saw what" in the administrative record, Dr. Neack has not provided actual evidence of those contradictions in his motion or response, nor specifically identified any document or type of document that is missing from, or otherwise at issue in, the administrative record. Doc. 44, PageID 945. Instead, he generally refers to "things," "items," and "communications" that are at issue following his deposition of UC Health designee, Michael Wiedeman. Doc. 40, PageID 911 n.2. Supposedly Wiedeman "could not confirm [the] accuracy" of the administrative record and "undercut the reliability of what UC Health had identified by testifying that portions of it were documents that Wiedeman had never seen before." Doc. 44, PageID 944. Yet, despite these alleged contradictions, Dr. Neack has not cited to any specific portion of Wiedeman's deposition testimony, nor provided the transcript to the Court for consideration in relation to the Cross-Motions.[2] Rather than provide that evidence, Dr. Neack asks the Court to ignore Buczek's declaration and accept the "strong reasons [he has] to believe" that the administrative record is incomplete. Doc. 40, PageID 911. These unsubstantiated, conclusory allegations do not persuade that the record is anything but complete. Thus, absent compelling evidence to the contrary, UC Health has authenticated the administrative record and it is

[2] Dr. Neack referred to Wiedeman's deposition testimony in a supplemental filing made in support of his request to amend his Complaint. At that time, the deposition transcript had yet to be finalized. Doc. 36. However, Dr. Neack did not request, nor make any attempt, to file the transcript in relation to the instant Cross-Motions.

properly before the Court for consideration.[3] *Pension Benefits Guar. Corp. v. Bendix Commer. Vehicle Sys., LLC*, No. 1:11-cv-1961, 2012 WL 629928, at *6 (N.D. Ohio Feb. 24, 2012) (quoting *Hickey v. Chadick*, No. 2:08-cv-824, 2009 WL 3064445, at *2 (S.D. Ohio Sept. 18, 2009) ("An agency is given a 'strong presumption of regularity' in its submission and certification of the administrative record . . . [t]hus, '[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.'")).

**B. The arbitrary and capricious standard of review applies.**

Having concluded that the administrative record is properly before the Court, focus now shifts to the standard of review. Dr. Neack asks the Court to apply a *de novo* standard of review, while UC Health requests an arbitrary and capricious standard. Dr. Neack's argument is based on his debunked assertion that the administrative record is incomplete, and he provides no alternative reason why *de novo* review is appropriate. For that and other reasons that will be discussed, the arbitrary and capricious standard applies here.

When a benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)), the district court reviews denial of benefits in an appellate posture only to determine whether the denial was "arbitrary and capricious," *Miller v. Metro. Life Ins. Co.*,

---

[3] Dr. Neack separately asserts that the administrative record was belatedly filed. While true as a technical matter, UC Health has offered a reasonable explanation for why the administrative record was filed on September 15, 2025, just three days after the deadline. UC Health experienced technical issues when trying to file the administrative record, and given that this occurred after close of business on Friday, September 12, 2025, the record was not filed until Monday, September 15, 2025. But to alleviate any prejudice to Dr. Neack, counsel for UC Health promptly emailed Dr. Neack's attorney to alert him of the issue and provide an unredacted version of the administrative record on the date the administrative record was due to be filed. Def. Ex. A-1. Dr. Neack has neither shown, nor attempted to argue, that he was unfairly prejudiced by the delay. Thus, to the extent he seeks to strike or otherwise invalidate the administrative record on this basis, that request is denied as UC Health has demonstrated excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B).

925 F.2d 979, 983 (6th Cir. 1991). When the plan does not grant discretionary authority or the benefits decision was made by an entity other than the authorized administrator, then a court reviews a plan administrator's termination of benefits *de novo*. *Firestone*, 489 U.S. at 115; *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009) (quoting *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001)). Here, the plans have given UC Health, the administrator, discretionary authority to determine eligibility for benefits, thus the arbitrary and capricious standard applies. *See* Doc. 37, PageID 427, 657.

"Review under [the arbitrary and capricious] standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998)). Though a district court conducting such a review is not required "merely to rubber stamp the administrator's decision," *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004), it should "uphold a benefit determination if it is 'rational in light of the plan's provisions.'" *Id.* (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000)). An administrator's decision is rational "if it is supported by substantial evidence" and "it is the result of a deliberate, principled reasoning process." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The burden is on the claimant to show that "the administrator's decision denying benefits was arbitrary and capricious; if the claimant cannot meet this burden, [the court] must sustain the administrator's decision as a matter of law." *Durbin v. Columbia Energy Grp. Pension Plan*, 522 F. App'x 341, 346 (6th Cir. 2013). The Court will now consider whether Dr. Neack has met that burden in this case.

**C. Defendant is entitled to judgment on the administrative record.**

The merits issue here is this: whether UC Health's decision to deny pension benefits to Dr. Neack because he failed to achieve the requisite Five Years of Participation to obtain vested pension benefits was arbitrary and capricious. Dr. Neack argues that it was arbitrary and capricious because it violated anti-cutback provisions and was not the result of a reasonable application of the UC Health Plan's provisions, specifically as it pertains to applying the elapsed time method to his First APC Employment Period. UC Health disagrees.

To engage in meaningful review under this standard, the Court must consider three separate time periods, which as stated are: the First APC Employment Period (July 31, 1995 to December 1, 2000), the Intervening MAMA Employment Period (December 1, 2000 to December 1, 2005), and the Second APC Employment Period (December 1, 2005 to May 1, 2010). From a glance, it may seem as though Dr. Neack had achieved Five Years of Participation under the Plan. But when considering the terms of the operative plans and the Gamble Amendment, that is not the case.

The Committee determined that Dr. Neack achieved only 4 years and 11 months of service during his First APC Employment Period. It found the hour counting method applied to some of that period, from July 31, 1995 to December 31, 1997. Admin. R., Doc. 37, PageID 849. Then, following the Gamble Amendment that became effective on January 1, 1998, the *elapsed time method* applied to the remainder of that initial period, from January 1, 1998 to December 1, 2000. *Id.* Under this rationale, because Dr. Neack did not complete at least 1,000 hours of service from July 31, 1995 to December 31, 1995, Dr. Neack did not achieve a Year of Participation for 1995. *Id.* He did, however, achieve a Year of Participation in 1996 and 1997 under the hour counting method. *Id.* Dr. Neack also achieved a Year of Participation

under the elapsed time method in 1998 and 1999. *Id.* Dr. Neack did not achieve a Year of Participation for 2000 under the elapsed time method because Dr. Neack terminated his employment on December 1, 2000. The Committee explained in its decision:

> You did not receive credit for a Year of Participation for 2000 because you incurred a "Severance from Physician Service" (defined in Section 2.57(c)(5)) on December 1, 2000 when you terminated employment with APC to form and become an employee MAMA. You were not employed by APC for the entire 12-month period as required under the elapsed time method of crediting service, so you only received credit for eleven full months in the year 2000.

*Id.*

In relation to these findings, Dr. Neack asserts that the terms of the Gamble Amendment did not mandate application of the elapsed time method to him; instead, Dr. Neack maintains that the elapsed time method was merely an alternative path to credit for APC Physicians. Doc. 40, PageID 916–17. In other words, the Committee could apply either the hours counting method or the elapsed time method to his Years of Participation following the Gamble Amendment. Thus, in Dr. Neack's view, because he completed at least 1,000 hours of service in 2000, he achieved a Year of Participation for that year under the hour counting method. But UC Health has a different take—that is, the hour counting method was unavailable to Dr. Neack because it was required to apply the same methodology to all APC Physicians under 26 C.F.R. § 1.410(a)-7(a)(4)(ii). Doc. 43, PageID 933–34. The regulation provides: "A plan using the elapsed time method of crediting service for one or more classifications of employees covered under the plan may use the general method of crediting service set forth in 29 CFR 2530.200b-2 or any of the equivalencies set forth in 29 CFR 2530.200b-3 for other classifications of employees, provided that such classifications are reasonable and are consistently applied." 26 C.F.R. § 1.410(a)-7(a)(4)(ii). Thus, against that

backdrop, UC Health asserts that Dr. Neack, as an APC Physician, was subject to the elapsed time method under the Gamble Amendment.

So what does all this mean for Dr. Neack's benefits claim? In the words of the Sixth Circuit: "Mindful that we are judges—not actuaries or the 'fairness police'—we ask one question, and one question only: Is the Plan language clear?" *Clemons v. Norton Healthcare, Inc.*, 890 F.3d 254, 269 (6th Cir. 2018). Here, the answer is yes. The language in the Plan and the Gamble Amendment is clear and unambiguous: the elapsed time method applied to APC Physicians like Dr. Neack as a result of the Gamble Amendment, which became effective January 1, 1998.[4] The Court need not consider 26 C.F.R. § 1.410(a)-7(a)(4)(ii) to reach this conclusion.

Dr. Neack tries to persuade that Section 2.56(c) shows the Committee's decision was not a reasonable application of the Plan's provisions, and that the hour counting method remained on the table for Dr. Neack after the Gamble Amendment. Section 2.56(c) reads:

> [Section] 2.56(c) Except for the transition period described at Section 2.57(c)(3)(C), no Years of Participation shall be earned under this Section 2.56 with respect to any period that the Participant is being credited with Years of Service for APC Physician under Section 2.57. With respect to such a Participant being credited with Years of Service for APC Physician, Years of Participation means the sum of the following:
>
> > (1) Years of Participation earned by the Participant under Subsections (a) and (b); and
> >
> > (2) Years of Service for APC Physician earned by the Participant under Section 2.57.

---

[4] In any event, even if the Plan language were not clear and Dr. Neack's competing interpretation had some appeal, this Court must "afford[] the plan administrator 'great leeway' in interpreting ambiguous terms." *Fenwick v. Hartford Life & Accident Ins. Co.*, 841 F. App'x 847, 853 (6th Cir. 2021) (quoting *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995)). There is no indication from the record that the Committee's determination when assessing the applicability of the Gamble Amendment to Dr. Neack was anything but reasonable.

Admin. R., Doc. 37, PageID 600. This, however, does not show that the Committee could apply the hour counting method to Dr. Neack after the Gamble Amendment. Instead it operates as a general prohibition on double counting. And to Dr. Neack's detriment, when addressing his appeal, the Committee rejected the proposition that he advances here:

> Section 2.56(c) contains special rules for APC physicians that became effective as January 1, 1998 to more closely align administration of the Plan with the physicians' practices. These rules do not require such hour counting in determining a Year of Participation, but simply require measuring each physician's elapsed time of employment with APC (referred to as a "Year of Service for APC Physician" as defined in Section 2.57). The application of the hour counting method to your period of employment from July 31, 1995 through December 31, 1997, and the elapsed time method to your period of employment from January 1, 1998 to December 1, 2000, results in you not having achieved five or more total Years of Participation for vesting purposes[.]

*Id.* at PageID 849. The record therefore demonstrates that the Committee's decision in this regard resulted from "a deliberate, principled reasoning process," *Baker*, 929 F.2d at 1144, and was "rational in light of the plan's provisions," *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003) (citation omitted). As for the rest of the First APC Employment Period, Dr. Neack does not dispute that the hours counting method applied to 1995, 1996, and 1997, nor that he failed to achieve a Year of Participation in 1995.

The Second APC Employment Period is subject to the same deficiency as the first. Dr. Neack returned to APC on December 1, 2005 and remained until May 1, 2010. This amounts to less than Five Years of Participation under the Plan, and Dr. Neack makes no argument to the contrary. But what about aggregating Dr. Neack's First Employment Period and Second Employment Period? Unfortunately for Dr. Neack, that is not permitted under the Plan because that Intervening MAMA Employment Period qualifies as a "Break in Service." Section 2.10(a)(2) of the Gamble Plan defines a "Break in Service" as "five or more consecutive Plan Years during one or more days of the first of which a person is not an

Employee and is not on a Leave of Absence and in each of which he does not complete more than 500 Hours of Service." Admin. R., Doc. 37, PageID 376. Dr. Neack had a five-year Break in Service from December 1, 2000 to December 1, 2005. In relation to a Break in Service, Section 2.45(b) of the Gamble Plan further states:

> [T]he following years of service shall be disregarded for vesting purposes: (1) years prior to a Break in Service if, at the time of incurring such Break in Service, the individual did not have any nonforfeitable right to an Employer-derived benefit and if the Break in Service equals or exceeds his Years of Participation before such Break, provided that such Years of Participation before such Break shall be deemed not to include any of such individual's Years of Participation not taken into account hereunder by reason of any prior Breaks in Service incurred by him[.]

*Id.* at PageID 384; *see id.*, Second Amendment to the Gamble Plan at PageID 449; Alliance Plan at PageID 474; UC Health Plan at PageID 587, 741. Because the Intervening MAMA Employment Period qualifies as a Break in Service, Dr. Neack cannot aggregate his First APC Employment Period with his Second APC Employment Period for purposes of achieving the requisite Five Years of Participation. And Dr. Neack seems to accept that conclusion as he has not attempted to argue otherwise.

To contest the Committee's decision from a different perspective, Dr. Neack contends that the Committee erroneously relied on the Gamble Amendment in violation of the anti-cutback provisions in 26 U.S.C. § 411.[5] But UC Health counters that the Eleventh Circuit has rejected an argument similar to that which Dr. Neack raises in *Gilley v. Monsanto Co.*, 490 F.3d

[5] Dr. Neack also refers generally to "Reg. Section 1.411," but his developed argument rests on 26 U.S.C. § 411(d)(6), which provides that a participant's accrued benefit may not be decreased by a plan amendment. Doc. 40, PageID 913–14. Although Dr. Neack elsewhere cites § 411(a)(10)(B) for the general proposition that ERISA contemplates amendments affecting vesting schedules, he does not separately argue that the Gamble Amendment changed the Plan's vesting schedule within the meaning of that provision, that he satisfied the provision's prerequisites, or that UC Health failed to provide a required election. Doc. 44, PageID 947 n.3. The Court therefore confines its analysis to Dr. Neack's developed anti-cutback argument under § 411(d)(6) and the parallel protection in § 204(g), 29 U.S.C. § 1054(g).

848, 852 (11th Cir. 2007). Although not binding on this Court, *Gilley* provides persuasive support for UC Health's position. In *Gilley*, the Eleventh Circuit held that ERISA's anti-cutback provision, § 204(g), does not prohibit an amendment that changes the method for calculating service used to determine vesting, so long as the amendment does not reduce the amount of the participant's accrued benefit or the rate at which that benefit accrues. *Gilley*, 490 F.3d at 858–59. The court distinguished between benefit accrual, which concerns the amount of the pension earned, and vesting, which concerns whether the participant has satisfied the conditions necessary to render that benefit nonforfeitable. *Id*. at 858–59 (citing *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 749 (2004)). Thus, even though the plan amendment in *Gilley* adversely affected the participant's ability to satisfy the plan's service requirement, it did not violate § 204(g) because it "did not reduce the amount of his accrued benefit or the rate at which he was accruing benefits." *Id*. at 859.

The same reasoning applies here. The Gamble Amendment altered the method by which Years of Participation were credited for APC Physicians, like Dr. Neack; it did not alter the Plan's benefit formula or reduce the amount of any accrued benefit to which Dr. Neack would have been entitled had he vested. Dr. Neack has presented no reason for this Court to depart from the rationale set forth in *Gilley*, and the Court has identified no case that would compel a different result. Accordingly, the Gamble Amendment's effect on Dr. Neack's ability to satisfy the Plan's vesting requirement does not, without more, implicate ERISA's anti-cutback rule. Dr. Neack's argument therefore is without merit.

Accordingly, Dr. Neack has not shown that UC Health's decision denying pension benefits was arbitrary and capricious. The decision must be sustained as a matter of law.

## III. CONCLUSION

For the foregoing reasons, Defendant UC Health's Motion for Judgment on the Administrative Record (Doc. 39) is **GRANTED** and Plaintiff Dr. Neack's Motion for Judgment on the Administrative Record (Doc. 40) is **DENIED**. The Clerk is **ORDERED** to **ENTER JUDGMENT** and **TERMINATE** this matter on the docket.

**IT IS SO ORDERED.**

August 20, 2026

Jeffery P. Hopkins
United States District Judge